UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**WHERE TO BUY, LLC,**

    **Plaintiff,**

    v.

**DATASEMBLY, INC., SPINS LLC, DESTINI GLOBAL LLC,**

    **Defendants.**

Civ. No. 22-6664 (KM) (JBC)

**REDACTED OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff Where to Buy, LLC ("Where to Buy"), a New Jersey limited liability company, filed a motion for a temporary restraining order and preliminary injunction against (1) Defendant Datasembly, Inc. ("Datasembly"); (2) Defendant SPINS LLC ("SPINS"); and (3) Defendant Destini Global LLC ("Destini"). (DE 2.)[1] I previously denied the motion for a preliminary injunction

---

[1]     Certain citations to the record are abbreviated as follows:

Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = First Amended Complaint (DE 34)

Mot. = Where to Buy's Motion for Preliminary Injunction and Temporary Restraining Order (DE 2)

Hack Decl. = Declaration of Brian Hack in Support of Preliminary Injunction and Temporary Restraining Order (DE 2-1)

MSA = Master Services Agreement between Where to Buy and Datasembly dated May 19, 2020 (DE 2-2 Exhibit A)

Sexton Decl. = Declaration of Ian Sexton (DE 17-1)

SRA = Strategic Relationship Agreement Between SPINS and Datasembly dated May 26, 2022 (DE 17-2)

Op. = SPINS and Destini's Opposition to Where to Buy's Motion for Preliminary Injunction (DE 18)

Kouffman Decl. = Declaration of Jesse Kouffman (DE 18-1)

against Datasembly. (DE 73.) The motion for a preliminary injunction against SPINS and Destini, however, remained outstanding while issues of personal jurisdiction were being resolved. I now rule that the motion for a preliminary injunction against SPINS and Destini must likewise be **DENIED**.

## I. BACKGROUND

### A. Summary of Facts

Where to Buy is a company "engaged in the business of creating online tools for food brands to provide publicly available information on retail store locations where consumer food products may be purchased." (MSA p. 1.) Datasembly is a corporation that collects retail data from grocery and quick service retail locations by "scraping" the retailers' websites for the information. (Sexton Decl. ¶¶ 3, 6.) Datasembly then licenses its data to third parties. (*Id.* ¶ 4.) SPINS is a company that provides data to brand manufacturers and retailers. (Kouffman Decl. ¶ 1.) Destini is a subsidiary of SPINS. (*Id.* ¶ 1.) Where to Buy and Destini are competitors in their industry. (*Id.* ¶ 3.)

In 2018, Brian Hack, a member of Where to Buy, recognized that "CPG brands had an unmet need to cost-effectively learn where, specifically, their products are being sold . . . on a store-by-store and product-by-product basis, and to share that information with their customers." (Hack Decl. ¶ 6.) Hack met with the founder and CEO of Datasembly in September 2018 and determined that Datasembly's data could be used to meet that need. (*Id.* ¶ 6.) From 2018 to 2020, Hack continued to meet with Datasembly executives to discuss the business partnership and negotiate a license agreement. (*Id.* ¶ 10.) Where to Buy and Datasembly entered into the Master Services Agreement ("MSA") on May 19, 2020.

---

Reply = Where to Buy's Reply Letter in Further Support of Motion for Preliminary Injunction (DE 35)

Hack Reply Decl. = Reply Declaration of Brian Hack in Further Support of Order to Show Cause for Preliminary Injunction (DE 35-1)

Under the MSA, Datasembly agrees to deliver "Data" to Where to Buy in exchange for a licensing fee. (MSA §§ 2.1, 3.1.) "Data" is defined as "the data gathered by [Datasembly], from publicly-available sources, on pricing availability of a wide variety of consumer packaged goods provided hereunder." (MSA § 1.3.) The MSA grants a defined scope of exclusivity in connection with Where to Buy's license to the same Data. (MSA § 5.2.) The MSA also grants Where to Buy a limited license to use the "DATASEMBLY" trademark:

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

**[Redacted]**

XXXXXX

On February 26, 2021, Datasembly disclosed to Where to Buy that it was working on a potential partnership with SPINS. (Hack Decl. ¶ 30.) On March 2, 2021, Where to Buy warned Datasembly that "any arrangement which allowed Destini to sell the Data to its customers would violate the MSA." (*Id.*)

Nevertheless, on May 26, 2022, Datasembly and SPINS entered into a Strategic Relationship Agreement ("SRA"). XXXXXXXXXXXXXXXXXXXXXXXX

**[Redacted]**

**[Redacted]**

XXXXXXXXX

On September 16, 2022, Where to Buy notified Datasembly that it was in breach of the MSA and demanded that it cease and desist sharing the Data with SPINS. (Hack Decl. ¶ 42.) On September 22, 2022, Where to Buy put SPINS on notice of Where to Buy's rights under the MSA and its demand that Datasembly cease and desist receiving, using, and selling the Data. (*Id.* ¶ 43.) On September 28, 2022, SPINS replied to Where to Buy: "Datasembly assures us that the SPINS agreement with Datasembly does not constitute a breach of the contract between Where to Buy and Datasembly. We have relied and will continue to rely on this representation from Datasembly." (*Id.*)

### B. Procedural History

On November 17, 2022, Where to Buy filed its complaint in this action, asserting five counts: breach of contract as to Datasembly (Counts I and II); tortious interference with contract as to SPINS and Destini (Counts III and IV); and tortious interference with prospective economic advantage as to SPINS and Destini (Count V). (DE 1.) Where to Buy also filed a motion for a temporary restraining order and preliminary injunction seeking to enjoin Datasembly from "directly or indirectly sharing with, selling, licensing, making available to or otherwise permitting the use of its store location and product data and/or its trademark by SPINS or any of its parents, subsidiaries or affiliates, including Defendant Destini [] in connection with any online tools offered to third-party

food brands on the retail store locations where consumer food products may be purchased" and to enjoin SPINS and Destini from "directly or indirectly sharing with, selling, licensing, making available to or otherwise permitting the use of [Datasembly's] store location and product data and/or trademark in connection with store locator services." (*See* DE 2-3.) On November 18, 2022, I denied Where to Buy's motion for an immediate temporary restraining order but ordered Datasembly, SPINS, and Destini to appear for a show-cause hearing on December 6, 2022. (DE 4.) On December 5, 2022, Datasembly, SPINS, and Destini filed their written oppositions to Where to Buy's motion. (DE 17, 18.)

The parties appeared for the show-cause hearing on December 6, 2022. (DE 21.) They argued their positions on injunctive relief and offered affidavits in lieu of testimony. During the hearing, it appeared that there were outstanding issues of fact as to the Court's personal jurisdiction over SPINS and Destini, and I ordered them to engage in targeted discovery on that issue. (DE 31 p. 49.) Additionally, I authorized Where to Buy to file a declaration in reply to defendants' briefing. (DE 31 pp. 32–33.) Where to Buy filed its reply on December 20, 2022, along with an amended complaint. (DE 34, 35.)

The amended complaint asserts three new causes of action against SPINS and Destini: trademark infringement under 15 U.S.C. § 1125(a) (Count VI); unfair competition under N.J. Stat. Ann. § 56:4-1 (Count VII); and unfair competition under New Jersey common law (Count VIII). I permitted defendants the opportunity to respond to Where to Buy's reply and amended complaint. (DE 39.) On January 20, 2022, Datasembly, SPINS, and Destini filed their sur-replies in further opposition to Where to Buy's motion. (DE 44, 46.)

On March 2, 2023, I denied Where to Buy's motion for a preliminary injunction against Datasembly. (DE 73.) At the time, Where to Buy was still in the process of taking jurisdictional discovery of SPINS and Destini. SPINS and Destini have now waived their personal jurisdiction objection.[2] (DE 86.)

---

[2] SPINS and Destini have now consented to the personal jurisdiction of this court for purposes of this litigation and withdrawn their arguments challenging personal

## II.  DISCUSSION

"A plaintiff seeking a preliminary injunction must establish (1) that he [*sic*] is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (numbering added); *accord American Express Travel Related Servs., Inc. v. Sidamon-Eristoff*, 669 F.3d 359, 366 (3d Cir. 2012). Because a preliminary injunction is "an extraordinary and drastic remedy," the plaintiff must establish each element by a "clear showing." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–30 (2d ed. 1995)). Even then, a trial court's decision to issue a preliminary injunction is "an act of equitable discretion." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).[3]

A court will consider all four factors, but the first two are essential. *See Adams v. Freedom Forge Corp.*, 204 F. 3d 475, 484 (3d Cir. 2000); *accord Hoxworth v. Blinder, Robinson & Co.*, 903 F.2d 186, 197 (3d Cir. 1990) (placing

---

jurisdiction. (DE 86.) Additionally, Datasembly has not raised any objection to personal jurisdiction. (*See* DE 62.) As such, I consider SPINS and Destini to have also withdrawn their objection to venue as well. *See* 28 U.S.C. § 1391(b)(1) ("A civil action may be brought in . . . a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located[.]") and 28 U.S.C. § 1391(c)(2) ("[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"); *see also Monello Landscape Indus., L.L.C. v. Hatch Landscape & Design, Inc.*, No. 16-cv-5803 (JMV), 2018 WL 2134058, at *6 (D.N.J. May 9, 2018) (concluding that venue was proper pursuant to 28 U.S.C. § 1391(b)(1) based on the court's personal jurisdiction over the entity defendant).

[3]    In a diversity case, although state law governs the substantive issues, federal law provides the standard for award of a preliminary injunction pursuant to Fed. R. Civ. P. 65. *Instant Air Freight Co. v. C.F. Air Freight Inc.*, 882 F.2d 797, 799 (3d Cir. 1989).

6

particular weight on the probability of irreparable harm and the likelihood of success on the merits, stating: "[W]e cannot sustain a preliminary injunction ordered by the district court where either or both of these prerequisites are absent." (quoting *In re Arthur Treacher's Franchisee Litigation*, 689 F.2d 1137, 1143 (3d Cir. 1982)); *Morton v. Beyer*, 822 F.2d 364, 367 & n.3 (3d Cir. 1987); *American Express*, 669 F.3d at 366, 374.

### A. Tortious Interference with Contract

To show a likelihood of success, Where to Buy must establish "a reasonable probability, not the certainty, of success on the merits." *SK & F. Co. v. Premo Pharm. Labs., Inc.*, 625 F.2d 1055, 1066 (3d Cir. 1980). Under New Jersey law,[4] a claim of tortious interference requires (1) the existence of a contract, (2) intentional interference, with malice, (3) loss of the contract, and (4) damages. *Velop, Inc. v. Kaplan*, 693 A.2d 917, 926 (N.J. Super. Ct. App. Div. 1997) (citing *Printing Mart–Morristown v. Sharp Electronics*, 563 A.2d 31 (N.J. 1989)). An action for tortious interference with contract protects "parties to an existing . . . contractual relationship from outside interference." *Printing Mart–Morristown*, 563 A.2d at 38.

Where to Buy alleges that SPINS and Destini interfered with its contractual rights under the MSA and with its customers. (Compl. ¶¶ 63–66, 68–71.) Where to Buy fails to establish a reasonable likelihood of success in establishing that it lost any contractual rights or customers.

*First*, regarding the MSA, I previously held that Where to Buy could not show a likelihood of success on the merits on its claim that Datasembly breached the MSA. A loss or breach of the contract is a necessary element of a tortious interference with contract claim. *See Velop, Inc.*, 693 A.2d at 926; *MedWell, LLC v. Cigna Corp.*, No. 20-cv-10627, 2021 WL 2010582, at *6 (D.N.J.

---

[4] For purposes of this preliminary injunction, the parties do not dispute that New Jersey law applies. SPINS and Destini reserve their right to challenge the applicable law in the future. (Op. p. 15 n.2.)

7

May 19, 2021) (dismissing tortious interference claim where plaintiff failed to allege a loss or breach of the contract).

*Second*, regarding the customer contracts, Where to Buy similarly has not shown a reasonable probability that any customer breached an existing contract. The complaint alleges that an existing Where to Buy customer visited a SPINS booth at an expo, and SPINS represented to the customer that it "would soon be able to offer web-scraped data . . . at an affordable price across all of their products, including Destini's store locator services." (Compl. ¶ 45.) The allegation says nothing about whether a contract existed between Where to Buy and the customer or how SPINS's action interfered with any such contract. In addition, Hack's reply declaration states that an existing client "was terminating its services with Where to Buy in order to move over to Destini." (Hack Reply Decl. p. 30.) That statement, however, does not say anything about an existing agreement or that it was breached. Again, without an underlying breach or interference with an identified contract, Where to Buy cannot show a reasonable probability that SPINS and Destini tortiously interfered with its customer contracts.

### B. Tortious Interference with Prospective Economic Advantage

Under New Jersey law, a claimant alleging tortious interference with prospective economic advantage must show that (1) it had a reasonable expectation of economic advantage; (2) the interference was done intentionally and with malice; (3) the interference caused the loss of prospective gain; and (4) the injury caused damage. *Printing Mart–Morristown*, 563 A.2d 37 (N.J. 1989); *see Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 382 (3d Cir. 2016).

Where to Buy claims a reasonable expectation of economic advantage because it hoped to sell its product locator service to certain prospective customers who instead received a better offer from SPINS and Destini. (*See, e.g.*, Compl. ¶¶ 47–48; Hack Reply Decl. ¶¶ 30–31.) Assuming *arguendo* that Where to Buy had a reasonable expectation of economic advantage in any party

it deemed a prospective customer, Where to Buy has not shown a reasonable probability that SPINS and Destini interfered with that expectation intentionally and with malice.

Here, the term "malice" means that any harm "was inflicted intentionally and without justification or excuse." *Printing Mart-Morristown*, 563 A.2d at 37 (citing *Rainier's Dairies v. Raritan Valley Farms, Inc.*, 117 A.2d 889 (N.J. 1955)). "To qualify as malice, 'conduct must be both injurious and transgressive of generally accepted standards of common morality or of law.'" *Berkley Risk Sols., LLC v. Indus. Re-Int'l, Inc.*, No. A-2366-15T1, 2017 WL 4159170, at *6 (N.J. Super. Ct. App. Div. Sept. 20, 2017) (quoting *Lamorte Burns & Co. v. Walters*, 770 A.2d 1158, 1170–71 (N.J. 2001)).

That a party "acted to advance [its] own interest and financial position does not establish the necessary malice or wrongful conduct." *Coast to Coast Ent., LLC v. Coastal Amusements, Inc.*, No. 05-cv-3997, 2005 WL 7979273, at *23 (D.N.J. Nov. 7, 2005) (quoting *Dello Russo, M.D. v. Nagel*, 817 A.2d 426, 434 (N.J. Super. Ct. App. Div. 2003)). The court should consider "whether the conduct was sanctioned by the rules of the game, for where a plaintiff's loss of business is merely the incident of healthy competition, there is no compensable tort injury." *Matrix Distributors, Inc. v. Nat'l Ass'n of Boards of Pharmacy*, 34 F.4th 190, 200 (3d Cir. 2022) (quoting *Lamorte*, 770 A.2d at 1170).

The complaint makes clear that Where to Buy, SPINS, and Destini are competitors in the same market: "WTB's [Where to Buy's] #1 competitor is Destini and [] WTB's entire business is built on 'beating' Destini in the market for the sale of store location and product data." (Compl. ¶ 31.) However, Where to Buy fails to show a reasonable probability that SPINS and Destini engaged in malicious, wrongful, or unjustified conduct that would violate the "rules of the game." Where to Buy's theory of tortious interference depends on SPINS and Destini's wrongful use of the Data in order to pursue Where to Buy's prospective customers. (*See* Mot. pp. 11–12.) I have already concluded that, at this stage, Where to Buy has not shown a reasonable probability that

9

Datasembly's licensing of the Data to SPINS and Destini violates the MSA. (*See* DE 73 pp. 7–12.) Therefore, Where to Buy cannot show a reasonable probability that SPINS and Destini acted intentionally and with malice when they used the Data, pursuant to the SRA, to attract customers, or that they acted in anything but their own legitimate commercial interest.

\*   \*   \*

Where to Buy has failed to show a likelihood of success on the merits as to its tortious interference claims. (Counts III, IV, and V) I will therefore deny the preliminary injunction as to these claims. *See American Express*, 669 F.3d at 366 ("The moving party's failure to show a likelihood of success on the merits 'must necessarily result in the denial of a preliminary injunction.'" (quoting *In re Arthur Treacher's Franchisee Litig.*, 689 F.2d 1137, 1143 (3d Cir. 1982)).

### C. Trademark Infringement and Unfair Competition

To state a claim for trademark infringement, 15 U.S.C. § 1114, and unfair competition/false designation of origin, 15 U.S.C. § 1125(a), under the Lanham Act, a plaintiff must show three elements: "(1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark to identify goods or services causes a likelihood of confusion." *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ("We measure federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125(a)(1)(A), by identical standards"); *See also Chanel, Inc. v. Matos*, 133 F. Supp. 3d 678, 684 n.6 (D.N.J. 2015) ("Courts in the Third Circuit consider claims for trademark infringement and for false designation of origin under an identical standard.") (citing A*&H Sportswear*). A plaintiff bears the burden of proving these elements.

"[T]he elements of a claim of unfair competition under the Lanham Act are the same as for claims of unfair competition and trademark infringement under New Jersey statutory and common law." *Buying For The Home, LLC v. Humble Abode, LLC*, 459 F. Supp. 2d 310, 317–18 (D.N.J. 2006) (citing *J & J*

10

*Snack Foods, Corp. v. Earthgrains Co.*, 220 F. Supp. 2d 358, 374 (D.N.J. 2002) ("[T]he elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law . . . ."); *Konowicz v. Carr*, 838 F. App'x 1, 7 (3d Cir. 2020). Accordingly, my ruling as to the Lanham Act claim equally applies to the claims of unfair competition under New Jersey law.

The parties dispute whether Where to Buy, as licensee but not owner of the mark, has a right to bring its trademark infringement and unfair competition claims. The parties frame this argument as one of standing, but the aptness or not of that terminology is immaterial. In *Lexmark International, Inc. v. Static Control Components*, the Supreme Court set forth a two-prong test to determine whether a plaintiff possesses a statutory cause of action to sue under 15 U.S.C. § 1125(a) of the Lanham Act. The critical inquiry is whether the plaintiff "falls within the class of plaintiffs whom Congress has authorized to sue under § 1125(a)." 134 S. Ct. 1377, 1388 (2014).

Where to Buy argues that Congress has authorized a civil action "by any person who believes that he or she is or is likely to be damaged" by an act in violation of 15 U.S.C. § 1125(a); thus, a non-owner of a mark, such as a licensee, may be entitled to sue under § 1125(a). (Reply pp. 2–3.) *See Mercedes-Benz USA, LLC v. ATX Grp., Inc.*, No. 08-cv-3529, 2009 WL 2255727, at *9 (D.N.J. July 27, 2009); *Hotaling & Co., LLC v. LY Berditchev Corp.*, No. 20-cv-16366, 2021 WL 3783260, at *3 (D.N.J. Aug. 26, 2021). However, as Where to Buy's own case law recognizes, a licensee's rights are not absolute. *See Hotaling*, 2021 WL 3783260, at *4. Rather, "a licensee's right to sue to protect the mark largely depends on the rights granted to the licensee in the licensing agreement." *Kroma Makeup EU, LLC v. Boldface Licensing + Branding, Inc.*, 920 F.3d 704, 708 (11th Cir. 2019) (internal citations omitted); *compare Hotaling*, 2021 WL 3783260, at *4 (finding standing to bring a trademark infringement claim where the licensing agreement did not prohibit plaintiff from bringing

11

such an action) *with Tr Worldwide Phillyfood, LLC v. Tony Luke, Inc.*, No. 16-cv-1185, 2017 WL 396539, at *1 (D.N.J. Jan. 30, 2017) (dismissing trademark infringement claim because "the express terms of the license prohibited [the plaintiff] from bringing suit in [its] own capacity").

Where to Buy claims that it may maintain its Lanham Act claim because "[its] license (in the MSA) does not bar its enforcement of trademark rights." (*Id.* p. 3.) Section 5.3 of the MSA controls the extent of Where to Buy's right to use Datasembly's trademark. *See* Section I.A. I previously concluded that Section 5.3 does not grant Where to Buy an exclusive right to use the Mark in connection with the Data. (DE 73 pp. 12–14.) Relevant to the present discussion is this provision of the MSA: "All uses of or references to the Mark shall inure to the benefit of [Datasembly], and all rights with respect to the Mark not specifically granted in this Agreement shall be and are hereby reserved to [Datasembly]." (MSA § 5.3.) One reasonable interpretation of that provision could be that, because the MSA does not grant Where to Buy any right to bring a trademark infringement claim in its own capacity, such a right is expressly reserved to Datasembly. Where to Buy does not address that aspect of § 5.3 in its briefing.

At any rate, even assuming *arguendo* that Where to Buy has a right to bring its trademark infringement and unfair competition claims, it has failed to show a likelihood of success on the merits of those claims. Generally, "[a]n exclusive licensee does not have a claim for trademark infringement against a subsequent licensee. The claim arises instead under inducing breach against the subsequent licensee and for breach of contract against the licensor." *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 445 F.3d 841, 847 (5th Cir. 2006) (quoting McCarthy on Trademarks and Unfair Competition § 25:30). For example, in *City-Core Hospital, LLC v. Palmer,* the plaintiff alleged that it had entered into an exclusive agreement to license the defendant's mark. No. 17-cv-05544, 2018 WL 398257, at *1 (N.D. Cal. Jan. 12, 2018). The defendant, however, subsequently licensed the mark to various other entities. *Id.* The

plaintiff sued the defendant-licensor and the subsequent licensees under 15 U.S.C. § 1125(a) and the defendants moved to dismiss. *Id.* at *1–*2.

The court concluded that the plaintiff could not sue other valid licensees of the same mark because "[p]arties that have a valid license to use a mark and that use the mark in accordance with the license are merely exercising rights that have been granted by the licensor." *Id.* at *3. Therefore, the subsequent licensees were not falsely designating the source of the mark's goodwill. *Id.*; *see also* McCarthy on Trademarks and Unfair Competition § 32.12 ("[I]f the exclusive licensee cannot sue its licensor for infringement, it should not be allowed to sue another licensee whose right to use flows from the same trademark owner.").

The focused inquiry here is thus whether SPINS and Destini have "use[d] the mark in accordance with the license." See *City-Core Hospital*, 2018 WL 398257, at *3; *Gosden v. ErazorBits, Inc.*, No. 22-cv-75, 2023 WL 3078612, at *3 (D.N.J. Apr. 25, 2023) ("[T]he critical inquiry is ordinarily . . . whether allegations concern conduct exceeding the scope of the license (such as a licensee using a mark beyond the period of time, geographic scope, or manner permitted by the agreement), which gives rise to federal causes of action for infringement/unfair competition.") Where to Buy asserts that, under the SRA, SPINS and Destini may only use the mark in connection with Datasembly's customers; and according to Where to Buy, Destini has wrongfully been using the mark in connection with its own customers, in violation of the agreement. (Reply p. 2.)

The section of the SRA granting SPINS and Destini a limited license to use the Datasembly trademark and logo does not include any explicit provision limiting use of the mark to Datasembly's customers.[5] *See* Section I.A. (SRA §

---

[5]   Where to Buy claims that Datasembly stated in its brief in opposition to the preliminary injunction that "SPINS/Destini's license to sell the Data and use DA's trademarks is limited to DA's own customers." (Reply p. 2 (citing DE 17 pp. 19–20).) However, Datasembly's opposition brief does discuss any limitation on SPINS and Destini's trademark rights. That makes sense, considering Where to Buy did not

13

7(b)). The MSA, however, does contain language defining the permissible use of the *Data* in connection with Datasembly's own customers: "[Datasembly] shall not be deemed in breach of this Section 5.2 if: (a) [Datasembly] grants rights in the Data to a customer of [Datasembly] that uses a product similar to the Product[.]" (MSA § 5.2.) To the extent Where to Buy's interpretation of the trademark license granted to SPINS and Destini under the SRA depends on whether Datasembly breached the MSA, I have already concluded that there is insufficient evidence, at this stage, to justify preliminary injunctive relief based on Where to Buy's breach of contract claim against Datasembly.

\* \* \*

For the reasons discussed above, Where to Buy has failed to show a likelihood of success on the merits on its claims against SPINS and Destini for trademark infringement and unfair competition; therefore, I will deny the preliminary injunction. *See American Express*, 669 F.3d at 366.

### III.   CONCLUSION

For the reasons set forth above, the motion for preliminary injunction is denied. A separate order will issue.

Dated: July 27, 2023

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**

---

assert its trademark infringement and unfair competition claims until after Datasembly filed its opposition brief.